# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRANDEN PETTUS,             )
                                   )
                Petitioner    )
                                   )
      vs.                      )      Civil Action No. 10-951
                                   )
ROBERTO COLONS; THE ATTORNEY  )      Chief Magistrate Judge Maureen Kelly
GENERAL OF THE STATE OF      )
PENNSYLVANIA,            )
                                   )
             Respondents  )

## OPINION

Branden Pettus ("Petitioner"), proceeding pro se, filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "Petition"), in order to challenge his conviction of Third Degree Murder which was obtained in the Court of Common Pleas of Allegheny County.   ECF No. 1.   He asserts seven claims as grounds for habeas relief.

Because Petitioner fails to carry his burden to show that the state courts' adjudication of the two claims that Petitioner has not procedurally defaulted, was contrary to or an unreasonable application of United States Supreme Court precedent, he is not entitled to relief on those two claims.   Because Petitioner procedurally defaulted the remaining five claims, the Court will not address those claims on the merits.   A certificate of appealability will be denied because Petitioner does not show that jurists of reason would disagree concerning the denial of relief herein.

## I. FACTUAL HISTORY

The key facts of the criminal conduct at issue were summarized by the Pennsylvania

Superior Court on the Petitioner's direct appeal as follows:

> At approximately 6:30 p.m. on May 27, 1999, City of Pittsburgh Police Officers responded to a report of gun fire at 3840 Chartiers Avenue in the City of Pittsburgh. Upon arrival the police found the victim, Bruce Harvard, Jr., lying on the sidewalk in a pool of blood with a single gunshot wound to the neck. (Trial Testimony, pages 35-36). The paramedics pronounced him dead at the scene. (T.T. 54).
>
> Prior to the shooting [Appellant] and a group of his friends were assembled across the street from Steve Wray's Barbershop, located on Chartiers Avenue, when Howard Chaney and Bruce Harvard arrived at the barbershop. Carlos Drummond, Chaney's friend, was standing outside the barbershop waiting to get a haircut. (T.T. 352-353). [Appellant], who had previously been in an altercation with Chaney, walked to the front of the barbershop. Chaney exited the barbershop, words were exchanged, and Chaney punched [Appellant] in the face. The two began to fight on the sidewalk in front of the barbershop. (T.T. 356, 358-360). [Appellant's] friends, who were still across the street, quickly crossed the street, ostensibly to aid their friend and observe the fight. Jeffrey Bonner, one of [Appellant's] friends, punched Chaney in the back of the head while the latter was beating [Appellant]. Drummond then brandished his pistol and commanded the crowd to back up and allow the two to have a fair fight; the crowd complied. The blow to the head by Bonner shook Chaney, and he told Harvard to give him the pistol that he had given to Harvard to hold before confronting [Appellant]. At this point the fight between Chaney and [Appellant] had ended, Chaney and Drummond were brandishing pistols, and Chaney was threatening to shoot Boner for punching him. (T.T. 529-531). Threats were exchanged between Chaney and Drummond and the crowd, but after a few moments cooler heads prevailed and the crowd dispersed. (T.T. 362-363). [Appellant] quickly crossed the street and walked down Chartiers Avenue. A few moments later he encountered his cousin, Damon Pinkett, who gave him a nine-millimeter semi-automatic pistol. (T.T. 807-808). [Appellant] turned around, returned to the area across the street from the barbershop, and opened fire upon Chaney, Drummond, and Harvard, who were still standing near the front of the barbershop. (T.T. 299-300). Chaney and Drummond returned fire, and in the barrage of gunfire Bruce Harvard was hit in the neck by a bullet and killed. (T.T. 304-307. A bullet also grazed

the leg of Earl Harrison. (T.T. 262). [Appellant] fled immediately; Chaney and Drummond fled after determining that Harvard was dead. (T.T. 307, 370).

Superior Court Direct Appeal slip op. at 1 – 2 (attached hereto as Appendix I) (hereinafter cited as "Appendix I at __").[1]

## II. PROCEDURAL HISTORY

As a result of the above-described conduct, Petitioner was charged with one count of criminal homicide. On March 26-30, 2001, Petitioner appeared before the Honorable Lawrence J. O'Toole for a jury trial. Petitioner was represented by Attorney Manuel E. Rhodes. At trial, Petitioner took the stand in his own defense and claimed that he did not fire the first shot and that he only fired in self-defense. The jury, apparently not crediting Petitioner's version of the events, found Petitioner guilty of Third Degree Murder.

On May 30, 2001, Petitioner appeared before Judge O'Toole for sentencing. Petitioner obtained new counsel, i.e., Attorney Stephen Greenberg. At that sentencing hearing, Petitioner was sentenced to 20 to 40 years' incarceration.

On June 7, 2001, Petitioner, through Attorney Greenberg, filed a post sentence motion. ECF No. 14-1 at 22 – 26. In that post sentence motion, Petitioner claimed that Attorney Rhodes had rendered ineffective assistance of counsel for failing to call Mr. Marion Demma who would

---

[1]  Although Respondents attached a copy of the Superior Court's slip opinion on direct appeal to their Answer, ECF No. 14-2 at 24 – 28, the copy attached was missing every other page. A complete copy, obtained from the original state court record is attached hereto as Appendix I. The same is true of the Superior Court slip opinion in the PCRA proceedings. ECF No. 14-6 at 31 – 33, which is also missing every other page. Accordingly, the Superior Court slip opinion in the PCRA proceedings is attached hereto as Appendix II (hereinafter cited as "Appendix II at __").

have supported Petitioner's self-defense claim. On September 5, 2001, Petitioner appeared before Judge O'Toole for a hearing on his post sentence motion at which both Attorney Rhodes and Marion Demma testified. On October 3, 2001, the Court issued an order denying Petitioner's post sentence motion.

Petitioner, through Attorney Greenberg, filed a Notice of Appeal to the Pennsylvania Superior Court. On May 15, 2002, Petitioner, through Attorney Greenberg, filed a Concise Statement of Matters Complained of on Appeal. The trial court, on June 25, 2002, issued an opinion responding to Petitioner's Concise Statement. ECF No. 14-1 at 35 – 41.

On September 18, 2002, Petitioner, through Attorney Greenberg, filed a Brief for Appellant with the Pennsylvania Superior Court, raising two issues for appeal:

> I. WHETHER TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL MARION DEMMA AS A WITNESS, WHERE TRIAL COUNSEL WAS PROVIDED WITH A STATEMENT IN HIS DISCOVERY PACKET THAT MR. DEMMA MADE TO CITY OF PITTSBURGH POLICE OFFICERS IN WHICH MR. DEMMA CORROBORATED APPELLANT'S DEFENSE.
>
> II. WHETHER THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW TO SUPPORT A CONVICTION OF THIRD DEGREE MURDER WHERE THE COMMONWEALTH FAILED TO ESTABLISH THAT A BULLET FROM APPELLANT'S GUN KILLED THE VICTIM.

ECF No. 14-2 at 7.

On July 16, 2003, the Pennsylvania Superior Court issued an opinion, affirming Petitioner's judgment of sentence. On August 13, 2003, Petitioner, through Attorney Greenberg, filed a Petition for Allowance of Appeal to the Pennsylvania Supreme Court,

4

which raised essentially the same two issues as were raised in the brief to the Superior Court. This Petition for Allowance of Appeal was denied on December 16, 2003.

According to Petitioner, Attorney Greenberg represented to Petitioner that he would undertake the filing of a PCRA Petition but, failed to do so and for several years kept lying to Petitioner concerning that non-existent PCRA Petition. Attorney Greenberg died in an automobile accident on September 28, 2009. ECF No. 14-4 at 4.

Apparently, after ascertaining that no PCRA Petition had been filed by Attorney Greenburg, Petitioner, proceeding pro se, filed the instant Petition with this Court on July 19, 2010. ECF No. 1.

On July 20, 2010, Petitioner filed a *pro se* PCRA Petition, which was amended by appointed counsel, Scott Coffey, Esquire, on February 24, 2011. The Amended PCRA Petition raised the following claims:

> 1. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE TRIAL COURT'S INCORRECT AND CONTRADICTORY JURY INSTRUCTIONS ON VOLUNTARY MANSLAUGHTER, AND POST SENTENCING MOTIONS ("PSM") COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE INEFFECTIVENESS CLAIM.
>
> 2. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL CHARACTER WITNESSES, WHO WOULD HAVE TESTIFIED TO DEFENDANT'S REPUTATION IN THE COMMUNITY FOR NON-VIOLENCE, AND POST SENTENCING MOTION ("PSM") COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE INEFFECTIVENESS CLAIM.
>
> 3. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT OR REQUEST A MISTRIAL REGARDING PROSECUTORIAL MISCONDUCT IN ELICITING PREJUDICIAL TESTIMONY TO IMPROPERLY INVOKE SYMPATHY FOR THE VICTIM, AND THE PROSECUTOR'S REFERENCE

5

TO SAME IN CLOSING ARGUMENT; MOREOVER, POST SENTENCING MOTION ("PSM") COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE INEFFECTIVENESS CLAIM.

4. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO, OR REQUEST A MISTRIAL, REGARDING THE PROSECUTOR'S PREJUDICIAL AND IMPROPER CLOSING ARGUMENT ABOUT THE DECEASED'S FAILURE TO TESTIFY, AND POST SENTENCING MOTION ("PSM") COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE INEFFECTIVENESS CLAIM.

<u>See</u> Amended PCRA Petition, ECF No. 14-4 at 1 – 43.
.

On August 2, 2010, Petitioner filed a *pro se* Motion to Stay the Habeas Proceedings in this Court until after his PCRA Petition and appeal, therefrom, were completed. The Motion to Stay was granted. ECF No. 4.

On March 28, 2011, the Commonwealth filed a motion to dismiss Petitioner's PCRA Petition for lack of jurisdiction due to the time-bar. In that motion, the Commonwealth argued: that Petitioner had not met the jurisdictional requirements of the PCRA time-bar, that his claims did not fall within the enumerated exceptions to the time-bar, and that Petitioner had not shown that he had diligently pursued his claims in order to preserve them. On May 12, 2011, the PCRA Court issued an order dismissing Petitioner's PCRA Petition.

Petitioner, through Attorney Coffey, appealed to the Pennsylvania Superior Court. On July 21, 2011, the PCRA Court issued its Opinion explaining its dismissal of the PCRA Petition, finding the PCRA Petition to be time-barred. ECF No. 14-5 at 25 – 28. On September 21, 2011, Petitioner, through Attorney Coffey, filed a Brief in the Pennsylvania Superior Court, raising the following issues:

1. DID THE TRIAL COURT ERR IN DENYING APPELLANT'S PCRA PETITION WITHOUT A HEARING SINCE THE PCRA PETITION WAS CLEARLY NOT TIME-BARRED?

2. DID THE TRIAL COURT ERR IN DENYING APPELLANT'S PCRA PETITION WITHOUT A HEARING SINCE TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE TRIAL COURT'S INCORRECT AND CONTRADICTORY JURY INSTRUCTIONS ON VOLUNTARY MANSLAUGHTER, AND POST SENTENCING MOTION ("PSM") COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE INEFFECTIVENESS CLAIM?

3. DID THE TRIAL COURT ERR IN DENYING APPELLANT'S PCRA PETITION WITHOUT A HEARING SINCE TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL CHARACTER WITNESSES, WHO WOULD HAVE TESTIFIED TO APPELLANT'S REPUTATION IN THE COMMUNITY FOR NON-VIOLENCE, AND POST SENTENCING MOTION ("PSM") COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE INEFFECTIVENESS CLAIM?

4. DID THE TRIAL COURT ERR IN DENYING APPELLANT'S PCRA PETITION WITHOUT A HEARING SINCE TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT OR REQUEST A MISTRIAL REGARDING PROSECUTORIAL MISCONDUCT IN ELICITING PREJUDICIAL TESTIMONY TO IMPROPERLY INVOKE SYMPATHY FOR THE VICTIM, AND THE PROSECUTOR'S REFERENCE TO SAME IN CLOSING ARGUMENT; MOREOVER, POST SENTENCING MOTION ("PSM") COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE INEFFECTIVENESS CLAIM?

5. DID THE TRIAL COURT ERR IN DENYING APPELLANT'S PCRA PETITION WITHOUT A HEARING SINCE TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO, OR REQUEST A MISTRIAL, REGARDING THE PROSECUTOR'S PREJUDICIAL AND IMPROPER CLOSING ARGUMENT ABOUT THE DECEASED'S FAILURE TO TESTIFY, AND POST SENTENCING MOTION ("PSM") COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE THE INEFFECTIVENESS CLAIM?

See ECF No. 14-6 at 6 – 7.   On January 6, 2012, the Pennsylvania Superior Court affirmed the dismissal of Petitioner's PCRA Petition, finding it to be time-barred under state law.   Appendix II.

On February 1, 2012, Petitioner, through Attorney Coffey, filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court, which raised essentially the same claims as raised before the Pennsylvania Superior Court.   The Pennsylvania Supreme Court denied the Petition for Allowance of Appeal on July 23, 2012.   ECF No. 14-7 at 29.

On August 8, 2012, Petitioner filed a *pro se* notice to this Court that his State proceedings had completed, and a motion to reopen his Federal Habeas Petition, which was granted August 17, 2012.   ECF No. 7.

On September 19, 2012, Petitioner filed an Amended Petition for Writ of Habeas Corpus (the "Amended Petition").   In that Amended Petition, he raised seven claims:

> **Ground one:**   The state courts erred and/or abused their discretion in determining that trial counsel was not ineffective for failing to call Mr. Marion Demma as a defense witness.
>  . . . .
> **Ground two:**   The state courts erred and/or abused their discretion in determining that the evidence was not insufficient as a matter of law to support a conviction of Third Degree Murder, where the Commonwealth failed to establish that a bullet from the petitioner's gun killed the victim.
>  . . . .
> **Ground three:**   The state courts erred and/or abused their discretion in determining that counsel was not ineffective for failing to present available character witness testimony.
> . . . .

**Ground four:** The state courts erred and/or abused their discretion in determining that counsel was not ineffective for failing to object to the erroneous jury instruction on Voluntary Manslaughter.

. . . .

**Ground five:** The state courts erred and/or abused their discretion in determining that trial counsel was not ineffective for failing to object to or request a mistrial regarding the commonwealth [sic] eliciting prejudicial testimony and the reference to the same, in their closing arguments, and post-sentence counsel for failing to raise this ineffectiveness claim.

. . . .

**Ground six:** The state courts erred and/or abused their discretion in determining that trial counsel was not ineffective for failing to object to or request a mistrial regarding the commonwealth's remarks and improper closing argument about the victim's failure to testify, and post-sentence motion counsel for failing to raise this ineffectiveness claim.

. . . .

**Ground seven:** The state courts erred and/or abused their discretion in determining that trial counsel was not ineffective for failing to object to the courts [sic] supplemental instruction on malice.

ECF No. 9 at 2 – 5.

Respondents filed their Answer, asserting that Petitioner's claims were meritless and/or procedurally defaulted. ECF No. 14. Respondents also caused the original state court record to be transmitted to this Court. Petitioner filed a Response to the Answer and an Appendix to the Response. ECF Nos. 20, 21.

All the parties have consented to the exercise of plenary jurisdiction by the United States Magistrate Judge. ECF Nos. 10, 13.

## III.  APPLICABLE LEGAL PRINCIPLES

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (the "AEDPA") which amended the standards for reviewing state court judgments in

federal habeas petitions filed under 28 U.S.C. § 2254 was enacted on April 24, 1996. Because Petitioner's habeas Petition was filed after its effective date, the AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, the AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C. § 2254(d) and (e).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court has expounded upon the standard found in 28 U.S.C. § 2254(d). In Williams, the Supreme Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: 1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or 2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." Id. at 404-05 (emphasis deleted). The Supreme Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 412-13. The United States Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his

interpretation of Supreme Court precedent is more plausible than the state court's; rather, the

petitioner must demonstrate that Supreme Court precedent requires the contrary outcome."

Werts, 228 F.3d at 197 (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d

Cir. 1999)(en banc)).   Moreover, it is a petitioner's burden to prove the state court decision is

either contrary to or an unreasonable application of clearly established federal law.   See Matteo,

171 F.3d at 888; Werts, 228 F.3d at 197.   Under the "contrary to" clause, the relevant universe

of analysis is restricted to the holdings of United States Supreme Court cases as they existed at

the time of the state court decision.   Williams, 529 U.S. at 412.   In contrast, under the

"unreasonable application" clause, federal habeas courts may consider lower federal court cases

in determining whether the state court's application of United States Supreme Court precedent

was objectively unreasonable.   Matteo, 171 F.3d at 890.

The AEDPA also permits federal habeas relief where the state court's adjudication of the

claim "resulted in a decision that was based on an unreasonable determination of the facts in light

of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).

## IV.   DISCUSSION

### A.   Ground One: Counsel was ineffective for failing to call Mr. Demma.

Petitioner contends that Attorney Rhodes was ineffective for failing to call Mr. Demma as

a witness because Mr. Demma would have corroborated Petitioner's testimony that Petitioner did

not fire the first shot.   After conducting a hearing on the post sentence motions where this claim

was raised by Attorney Greenberg, the trial court found the claim meritless.   The trial court

reasoned as follows:

> To establish ineffectiveness for failure to call a witness, the defendant must first "... show how the testimony of the witness would have been beneficial under the circumstances of the case." ***Commonwealth v. Days***, 718 A.2d 797, 803 ([Pa.Super.] 1998). If this burden is met, the defendant must then establish that "1) the witness existed; 2) the witness was available to testify for the defense; 3) counsel knew of or should have know [sic] of the existence of the witness; 4) the witness was willing to testify for the defense; and 5) the absence of the witness' testimony was so prejudicial as to have denied the defendant a fair trial. [***Id.***]
>
> City of Pittsburgh Police Officers conducted two brief interviews with Mr. Demma. During both interviews he stated that he was not sure who was shooting because he only saw the back of the shooter. At the post-sentencing hearing he stated, "I really didn't see that much." (Post Sentencing Transcript, page 37). Moreover [Appellant's] trial counsel [i.e., Attorney Rhodes] conceded at that Post-Sentencing Hearing that he spoke with Mr. Demma prior to trial, and during the conversation Mr. Demma stated that when he observed the shooting he had just left the bar, he was intoxicated, and didn't remember anything about the shooting. [Appellant's] trial counsel also noted that Mr. Demma's recollection of the shooting "…seems a bit vague…" (P.S.T. 10). Considering the fact that Mr. Demma could not recall the events of May 27, 1999, as well as the marginal probative value of the two interviews he gave with police, it cannot be said that his absence at trial denied [Appellant] a fair trial due to the ineffectiveness of his defense counsel.

Appendix I at 5 – 6 (footnote omitted). The Superior Court adopted the trial court's reasoning as its own. Id. at 6.

This decision is neither contrary to United States Supreme Court precedent existing at the time of the state courts' decisions or an unreasonable application thereof. The test utilized by the state courts for determining ineffectiveness based on failure to call a witness is the same test used by the Federal Courts. See, e.g., Armstead v. Colleran, No. 02-CV-1216, 2003 WL 22436232, at *9 (E.D. Pa., Oct. 24, 2003)("To prove that counsel was ineffective for failing to call a witness, then, petitioner must show that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness;

(4) the witness was willing to testify for the defense; and (5) the absence of the witness was so prejudicial as to have denied petitioner of a fair trial.")(citing in support <u>Blasi v. Attorney General of the Commonwealth of Pennsylvania</u>, 120 F.Supp.2d 451, 474 (M.D. Pa. 2000), <u>aff'd</u>, 275 F.3d 33 (3d Cir. 2001), <u>cert</u>. <u>denied</u>, 122 S.Ct. 1540 (2002)); <u>Fithian v. Shannon</u>, No. CIV.A. 02-1861, 2002 WL 1636004, at *4 (E.D. Pa. July 23, 2002)(finding that the Superior Court's application of the test of ineffectiveness for failure to call a witness, the very test used by the PCRA court herein, was "neither contrary to nor an unreasonable application of federal law"). Accordingly, Ground One does not merit Petitioner federal habeas relief.

**B.    Ground Two:   The evidence was insufficient to support a Third Degree Murder conviction.**

In Ground Two, Petitioner complains that the evidence was insufficient to support a Third Degree Murder conviction because the Commonwealth failed to prove that it was his bullet which killed the victim.   Petitioner bases this argument in part on the fact that both he and one of the other shooters had a .9 millimeter gun which is the caliber of the bullet that killed the victim.   In rejecting this claim, the state courts noted that there was sufficient evidence to prove that Petitioner's gun was the cause of the deadly shot.   The state courts reasoned as follows:

> The jury was clearly warranted in finding that a bullet fired from [Appellant's] gun killed the victim.   Witnesses testified that [Appellant] was firing his weapon in the street. (T.T. 125, 300, 366-367).   The Commonwealth's expert witness, Dr. Shaun Ladham, testified that based on where the shell casings were located, Chaney and Drummond would have had to have turned away from shooting at [Appellant] and shot toward the victim in order to hit him.   (T.T. 442-443, 446).   Dr. Ladham also opined that the bullet that killed the victim was fired from a distance, which suggested that [Appellant] who was firing from the other side of the street, killed the victim.   (T.T. 440).   Moreover, [Appellant] testified that he

> shot at Chaney and Drummond, both of whom were on the same side of the street as the victim when he was struck by the bullet.
>
> In light of the number of witnesses, including [Appellant] who testified that [Appellant] fired into the general area in which the victim was standing, the jury could have reasonably inferred that a bullet from [Appellant's] gun killed the victim. Viewed in a light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, the Commonwealth proved beyond a reasonable doubt that the victim was killed by a bullet fired from [Appellant's] gun.

Appendix I at 8.

Petitioner fails to even argue, yet alone, establish that the state courts' disposition of this claim of insufficient evidence was either contrary to or an unreasonable application of United States Supreme Court precedent. Nor do we find it to be such. See, e.g., Eley v. Erickson, 712 F.3d 837, 848 (3d Cir. 2013) ("We agree with the Superior Court's later conclusion on PCRA appeal that these rules do not contradict *Jackson*. *Id*. at 612 ('[T]he federal standard enunciated in *Jackson* is [not] any different from that employed in Pennsylvania when reviewing sufficiency of the evidence questions.')."). Nor do we find that the state courts' adjudication resulted in an unreasonable determination of the facts. Accordingly, Ground Two does not afford Petitioner any relief in these federal habeas proceedings.

### C.  Grounds Three to Seven are procedurally defaulted.

Respondents point out in their Answer that Petitioner procedurally defaulted Grounds Three to Seven. We agree. We note that Grounds Three to Seven are essentially the grounds raised in the Petitioner's Amended PCRA Petition. However, the Pennsylvania Superior Court refused to address these claims on the merits because the Superior Court found that the PCRA Petition was untimely filed. Appendix II.

## 1. Doctrine of procedural default

The doctrine of procedural default provides that if a federal habeas petitioner has either failed to present a federal claim in the state courts or failed to comply with a state procedural rule and such failure to present or to comply would provide a basis for the state courts to decline to address the federal claim on the merits, then such federal claims may not be addressed by the federal habeas court. See, e.g., Wainwright v. Sykes, 433 U.S. 72 (1977) (failure to object at trial constituted waiver of issue under state law and hence, a procedural default under federal habeas law); Francis v. Henderson, 425 U.S. 536 (1976) (failure to comply with state procedure requiring challenges to composition of grand jury be made before trial constituted state waiver and, therefore, also constituted procedural default for purposes of federal habeas); O'Sullivan v. Boerckel, 526 U.S. 838, 848-49 (1999) (failure to raise issue in discretionary appeal to state supreme court constituted a procedural default for habeas purposes). The United States Court of Appeals for the Third Circuit has explained that the doctrine of procedural default in effect makes compliance with all relevant state-law procedural rules a precondition to federal habeas relief. Hull v. Freeman, 932 F.2d 159, 165 (3d Cir. 1991), *overruled on other grounds by*, Caswell v. Ryan, 953 F.2d 853 (3d Cir. 1992). See Smith v. Horn, 120 F.3d 400, 408 (3d Cir. 1997).

Procedural default will not be found based upon the failure to comply with the state procedural rule unless the state procedural rule is "adequate" and "independent." Coleman v. Thompson, 501 U.S. 722, 750 (1991), *modified by,* Martinez v. Ryan, 132 S.Ct. 1309 (2012). A state rule of procedure is "adequate" if it is firmly established and applied with some

consistency/regularly followed as measured at the time of the default in the state court proceedings. Doctor v. Walters, 96 F.3d 675, 684 (3d Cir. 1996), *abrogated on other grounds by*, Beard v. Kindler, 558 U.S. 53 (2009). A state rule of procedure is "independent" if it does not depend for its resolution on answering any federal constitutional question. Ake v. Oklahoma, 470 U.S. 68, 75 (1985) ("when resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law. . . .").

There are two exceptions to the procedural default doctrine. The first exception is where a federal legal issue that was not properly raised in the state courts and, therefore, procedurally defaulted may nonetheless be addressed by a federal habeas court if the petitioner shows cause for, and actual prejudice stemming from, the procedural default. Wainwright v. Sykes, 433 U.S. at 90 - 91. In order "[t]o show cause, a petitioner must prove 'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.' *Murray v. Carrier*, 477 U.S. 478, 488 (1986)." Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996). In order to show actual prejudice, "the habeas petitioner must prove not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage . . . . This standard essentially requires the petitioner to show he was denied 'fundamental fairness[.]'" Werts v. Vaughn, 228 F.3d at 193 (citations and some internal quotations omitted).

The second exception permits a federal court to address the merits of a procedurally defaulted claim where the petitioner can establish a "miscarriage of justice." In Werts v.

16

<u>Vaughn</u>, the United States Court of Appeals for the Third Circuit explained this exception as follows:

> if the petitioner fails to demonstrate cause and prejudice for the default, the federal habeas court may still review an otherwise procedurally defaulted claim upon a showing that failure to review the federal habeas claim will result in a "miscarriage of justice." Generally, this exception will apply only in extraordinary cases, i.e., "where a constitutional violation has probably resulted in the conviction of one who is actually innocent...." [*Murray v. Carrier*, 477 U.S. 478] at 496 [(1986)]. Thus, to establish a miscarriage of justice, the petitioner must prove that it is more likely than not that no reasonable juror would have convicted him. *Schlup v. Delo*, 513 U.S. 298, 326 (1995).

<u>Id</u>.

Finally, if a petitioner has committed a procedural default and has not shown either of the two exceptions, cause and actual prejudice or a miscarriage of justice, the proper disposition is to dismiss the procedurally defaulted claim with prejudice. <u>See</u>, <u>e.g.</u>, <u>Wainwright v. Sykes</u>; <u>McClain v. Deuth</u>, 151 F.3d 1033 (Table), 1998 WL 516804, at *2 (7th Cir. 1998); <u>Redeagle-Belgarde v. Wood</u>, 199 F.3d 1333 (Table), 1999 WL 985164, at *4 (9th Cir. 1999); <u>McNary v. Farley</u>, 16 F.3d 1225 (Table), 1994 WL 59278, at *3 n.3 (7th Cir. 1994); <u>Thompson v. Champion</u>, 996 F.2d 311 (Table), 1993 WL 170924, at *3 (10th Cir. 1993).

**2. Violation of the PCRA statute of limitations is a procedural default.**

The state courts found that Petitioner's PCRA Petition was time barred under state law. Such failure to timely file the PCRA Petition constitutes a procedural default of the claims raised therein. <u>See</u>, <u>e.g.</u>, <u>Banks v. Horn</u>, 49 F.Supp.2d 400 (M.D. Pa. 1999)(holding that the State Supreme Court's refusal to consider a death sentenced PCRA petitioner's claims because his

PCRA Petition was untimely constituted a procedural default barring federal habeas review and that the PCRA's statute of limitations and its application by the state Courts was independent and adequate).

As noted *supra*, a failure to abide by a state procedural rule which caused the state courts to refuse to address a claim on the merits, will not result in a procedural default in federal habeas proceedings unless the state procedural rule is "adequate" and "independent." Coleman v. Thompson, 501 U.S. 722, 750 (1991), *modified by,* Martinez v. Ryan, 132 S.Ct. 1309 (2012). A state rule of procedure is "adequate" if it is firmly established and applied with some consistency/regularly followed as measured at the time of the default in the state court proceedings. Doctor v. Walters, 96 F.3d 675, 684 (3d Cir. 1996), *abrogated on other grounds by*, Beard v. Kindler, 558 U.S. 53 (2009). A state rule of procedure is "independent" if it does not depend for its resolution on answering any federal constitutional question. Ake v. Oklahoma, 470 U.S. 68, 75 (1985). We find that the PCRA statute of limitations is both adequate and independent and thus, Petitioner procedurally defaulted Grounds Three to Seven.

Pursuant to Doctor v. Walters, we must measure whether the PCRA statute of limitations was regularly and consistently applied at the time of Petitioner's procedural default and not subsequently when the State Courts issued their opinions finding that Petitioner violated the PCRA statute of limitations. We find that Petitioner's procedural default occurred when the PCRA one year statute of limitations ran out, *i.e.*, March 14, 2005. Appendix II at 4. Measuring the adequacy of the PCRA statute of limitations as of that time, *i.e.*, as of March 14, 2005, we find that the PCRA statute of limitations was regularly and consistently applied as early

as 1999 and consistently thereafter. See Catanch v. Larkins, No. 98-85, 1999 WL 529036 (E.D. Pa. July 23, 1999) (holding certain claims which were not otherwise exhausted had been procedurally defaulted because the claims could not be brought under a second PCRA Petition as that petition would be time barred and that the state courts apply the PCRA statute of limitations consistently, thus rendering it an adequate and independent state law ground); Holland v. Horn, 150 F.Supp.2d 706 (E.D. Pa. 2001). We also find that the PCRA statute of limitations is independent because it does not depend on answering any federal legal question; the PCRA statute of limitations only asks did the petitioner file the PCRA Petition within one year after the conviction became final. Accordingly, because the state courts relied on an independent and adequate state law procedural rule, i.e., the PCRA statute of limitations, in refusing to consider Petitioner's claims (enumerated as Grounds Three to Seven in his Amended Habeas Petition) on the merits, Petitioner has procedurally defaulted Grounds Three to Seven for purposes of federal habeas review.

### 3. Petitioner procedurally defaulted his claim of "cause."

Petitioner, however, does argue "cause" to excuse this procedural default. He claims that Attorney Greenberg's failure to file the PCRA Petition as he had indicated he would and Attorney Greenberg's alleged misleading of Petitioner for several years concerning the pendency of the non-existent PCRA Petition serves as cause to excuse his failure to timely file a PCRA Petition. See ECF No. 20 at 7 – 10. In support thereof, Petitioner cites both Martinez v. Ryan, 132 S.Ct. 1309 (2012) and Maples v. Thomas, 132 S.Ct. 912 (2012).

In <u>Martinez</u>, the United States Supreme Court held that the ineffectiveness of post-conviction counsel could serve as "cause" to excuse a procedural default of a claim of trial counsel's ineffectiveness where the post-conviction proceedings were the first opportunity under state law to raise such claims of ineffective assistance of trial counsel. In <u>Maples</u>, the United States Supreme Court held that abandonment by post-conviction counsel can serve as cause to excuse a procedural default of claims raised in the post-conviction petition.

It does not appear that <u>Martinez</u> even applies here because <u>Martinez</u> by its terms seemingly applies solely where the PCRA proceedings would be the first opportunity a petitioner could raise a claim of the ineffective assistance of trial counsel. <u>Martinez</u>, 123 S.Ct. at 1320 ("Where, under state law, claims of ineffective assistance of trial counsel **must** be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.") (emphasis added).

In the case at issue, we note that at the time of Petitioner's post sentence motions, Petitioner retained new counsel and raised his trial counsel's (<u>i.e.</u>, Attorney Rhodes) ineffectiveness on one ground (*i.e.*, the failure to call Mr. Demma) but not on the other grounds of ineffectiveness asserted in Grounds Three to Seven. Post Sentence Motion, ECF No. 14-1 at 22 – 26. The trial court conducted a hearing on the post sentence motions. The trial court then addressed the sole claim of ineffectiveness of Attorney Rhodes on the merits, as did the Superior Court upon appeal. Hence, <u>Martinez</u> is not applicable to this case. <u>See</u>, <u>e.g.</u>, <u>Commonwealth v.</u>

<u>Taibu Grant</u>, 821 A.2d 1246, 1247 (Pa. 2003) (per curiam) ("We clarify that the rule announced in *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002), does not apply to claims of ineffective assistance of counsel where the intermediate appellate court on direct appeal has rendered a disposition on the merits.").[2]

However, we note that the holding of <u>Maples</u> might afford a basis on which to hold that Attorney Greenberg's alleged actions (in effectively abandoning Petitioner and allegedly misrepresenting that abandonment), may constitute "cause" so as to excuse Petitioner's procedural default when he failed to timely file a PCRA Petition. The Court in <u>Maples</u> found that being abandoned by counsel during the 42 days permitted in order to file an appeal under state law in that case constituted "cause" to excuse the procedural default occasioned thereby. <u>Maples</u>, 132 S.Ct. at 927.

Even if Petitioner has "cause" in the form of Attorney Greenberg's abandonment, which lead to the failure to file the PCRA Petition in a timely manner (and, consequently, also lead to the procedural default of Grounds Three to Seven), because Petitioner failed to properly present this claim of Attorney Greenberg's abandonment to the state courts, and the state courts consequently refused to address this claim of abandonment on the merits, Petitioner has

---

[2]  <u>Commonwealth v. Grant</u>, 813 A.2d 726 (Pa. 2002), was the case wherein the Pennsylvania Supreme Court held for the first time that claims of trial counsel's ineffectiveness must not be raised until the PCRA proceedings. The decision in <u>Commonwealth v. Grant</u>, 813 A.2d 726 (Pa. 2002) is the decision that brings Pennsylvania within the rule <u>Martinez</u>, *i.e.*, that claims of PCRA counsel's ineffectiveness may serve as cause to excuse the procedural default of a claim of trial counsel's ineffectiveness since the PCRA proceedings are the first opportunity in Pennsylvania to raise such claims of trial counsel's ineffectiveness.

procedurally defaulted this claim of cause.   In other words, because Petitioner failed to properly

present his claim of "cause" in the state courts and thereby has procedurally defaulted that claim

of cause, he cannot now rely on that claim of cause herein in order to excuse his procedural

default of Grounds Three through Seven.

The United States Supreme Court has clearly held that before a federal habeas petitioner

under Section 2254 may rely upon a claim of alleged ineffectiveness of counsel or abandonment

of counsel as cause in federal court to excuse a procedural default occurring in the state court, the

federal habeas petitioner must first have exhausted that claim of "cause", i.e., that claim of

ineffective assistance of counsel or abandonment of counsel in the state courts.   The Court

explained:

> [W]e think that the exhaustion doctrine, which is "principally designed to protect the state
> courts' role in the enforcement of federal law and prevent disruption of state judicial
> proceedings," Rose v. Lundy, 455 U.S. 509, 518 (1982), *generally requires that a claim*
> *of ineffective assistance be presented to the state courts as an independent claim before it*
> *may be used to establish cause for a procedural default....* [I]f a petitioner could raise his
> ineffective assistance claim for the first time on federal habeas in order to show cause for
> a procedural default, the federal habeas court would find itself in the anomalous position
> of adjudicating an unexhausted constitutional claim for which state court review might
> still be available.   The principle of comity that underlies the exhaustion doctrine would
> be ill served by a rule that allowed a federal district court "to upset a state court
> conviction without an opportunity to the state courts to correct a constitutional violation,"
> Darr v. Burford, 339 U.S. 200, 204 (1950), and that holds true whether an ineffective
> assistance claim is asserted as cause for a procedural default or denominated as an
> independent ground for habeas relief.

Murray, 477 U.S. at 488-89 (emphasis added, parallel citations omitted).   Moreover, as a

consequence of requiring a federal habeas petitioner to exhaust a claim of ineffective assistance

of counsel or abandonment by counsel (offered as "cause" to excuse a procedural default for

federal habeas purposes), a federal habeas petitioner's failure to exhaust or, to properly exhaust such a claim in the state courts, can result in the procedural default of that very claim of cause. See, e.g., Edwards v. Carpenter, 529 U.S. 446, 453 (2000) (holding that "an ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted").

In the instant case, Petitioner procedurally defaulted his claim of "cause" in the state courts, i.e., his claim that Attorney Greenberg was ineffective for failing to file the PCRA Petition and/or that Attorney Greenberg abandoned Petitioner.

Petitioner did, in fact, raise a claim of Attorney Greenberg's alleged ineffectiveness and/or abandonment in the state courts. Petitioner claimed in the state courts that Attorney Greenberg's alleged behavior brought him within one of the exceptions to the PCRA statute of limitations. The state courts refused to address this claim of Attorney Greenberg's alleged behavior on the merits as constituting either ineffectiveness or abandonment, finding instead that because Petitioner failed to bring a PCRA Petition within 60 days after discovering this new evidence of Attorney Greenberg's behavior, the state courts were barred from considering such claimed ineffectiveness of or abandonment by Attorney Greenberg on the merits.

Specifically, the Pennsylvania Superior Court held that:

Appellant argues within his amended petition and brief that he has established an exception to the PCRA time limitations pursuant to Section 9545(b)(1)(ii) because he "newly discovered that prior counsel [i.e., Attorney Greenberg] never filed a PCRA petition on his behalf, and he [i.e., Petitioner] filed his [PCRA] petition within sixty days of learning this fact. According to Appellant, "[f]or nine years [sic], [prior counsel] led [Appellant] and his family to believe that a PCRA had been timely filed and that there were delays in resolution

of the PCRA[.]"  Appellant's Brief at 13.  Our review of the record refutes Appellant's claim.

Appellant could easily have confirmed the fact that a PCRA petition was not filed in his case by checking his criminal docket.  Although Appellant alleges that prior counsel, who is now deceased, misled him to believe that a petition was pending, Appellant did not exercise due diligence.  ***See Commonwealth v. Monaco***, 996 A.2d 1076, 1080 (Pa. Super. 2010) (explaining that "[d]ue diligence demands that the petitioner take reasonable steps to protect his own interests"; "[a] petitioner must explain why he could not have obtained the new fact(s) earlier with the exercise of due diligence.").

Moreover, a letter dated January 15, 2010, to the Allegheny County Clerk of Courts reveals that Petitioner was aware at least as of that date that a PCRA petition was not filed by prior counsel.  Pursuant to Section 9545(b)(2), Appellant was required to file his PCRA petition within sixty days of that date.  This he did not do.  Rather, Appellant did not file his *pro se* petition until several months later.  Thus, Appellant's *pro se* PCRA petition in which he argued a time-bar exception, was itself untimely.

Appendix II at 4 – 5.

According to the Superior Court's reasoning, Petitioner's default of his claimed ineffectiveness of Attorney Greenberg occurred on or about March 15, 2010, *i.e.*, 60 days after January 15, 2010, where there is evidence that, as of the earlier date, Petitioner knew Attorney Greenberg had not filed a PCRA Petition in his case.[3]

_____

[3] Although not necessary to our disposition, we note that the docket for the Court of Common Pleas of Allegheny County in Petitioner's criminal case has a docket entry dated March 13, 2009, indicating that pro se correspondence was received from Petitioner and that "Inmate request [sic] a docket sheet to gain insight into his appeal.  Docket report sent per inmates [sic] request." ECF No. 14-1 at 12.  Also there is an entry dated January 8, 2010, noting pro se correspondence and that "docket sheet sent."  Id.  These docket entries could support an even earlier date for the Superior Court to have found that Petitioner was on notice that no PCRA Petition had been filed by Attorney Greenberg.

In a related vein, we find incredible Petitioner's suggestion that he only learned from Ms. Katie Berry (*i.e.*, Petitioner's mother) of Attorney Greenberg's death in May, 2010.  ECF No. 20 at 8 ("Subsequently, on May 10, 2010, petitioner was informed by Ms. Berry that attorney Greenberg was fatally injured in an automobile accident.").  Ms. Berry herself averred that she

(…footnote continued)

At that time, i.e., March 15, 2010, this state law procedural rule of requiring that claims of newly discovered evidence/claims be filed within sixty days of the discovery of such was regularly and consistently applied so as to render that rule "adequate" for purposes of the federal habeas corpus doctrine of procedural default.  See, e.g., Slutzker v. Johnson, 393 F.3d 373, 381 (3d Cir. 2004); Kubis v. Kyler, No. Civ.A. 03-1580, 2003 WL 23206073, at *3 (E.D. Pa. July 22, 2003)(finding a procedural default based on 42 Pa.C.S. § 9545(b)(2)); Abu-Jamal v. Horn, No. 99-5089, 2001 WL 827468, at *5 (E.D. Pa. July 20, 2001); Moye v. Coleman, Civ.A. 10–1681, 2012 WL 1191633, at *5 (E.D. Pa. April 9, 2012) ("If the one-year time limitation expires and new information thereafter comes to light, there is an exception which allows a defendant to file an additional PCRA petition within 60 days of learning that new information. See id. § 9545(b)(2). Even assuming Moye's claims raised herein are based on facts not known to him at the time of trial, Moye had all of the information necessary to file a second petition by the conclusion of his November 2, 2007, PCRA hearing, and thus would have been required to file such a petition no later than January 2008. Because Moye failed to present his claims regarding withheld evidence in state court, and independent and adequate state law grounds now preclude state court review, Moye's claims are procedurally defaulted."); Dorsey v. Wilson, No. 07-509, 2008 WL 2952892, at *8 n.4 (W.D. Pa. July 30, 2008).

The sixty-day requirement under state law is also clearly "independent" as well.   Hence, the state courts refused to consider Petitioner's claimed ineffective assistance/abandonment of

_____

learned of Attorney Greenberg's death in September 2009. ECF No. 14-4 at 24.

Attorney Greenberg on the merits because the state courts relied upon an independent and adequate state law procedural rule, which renders Petitioner's claimed ineffectiveness of Attorney Greenberg procedurally defaulted. Accordingly, because the sole excuse, i.e., Attorney Greenberg's alleged behavior, offered as cause to excuse his procedural default of Grounds Three through Seven, was itself procedurally defaulted, we cannot reach the merits of Petitioner's Grounds Three through Seven. Nor can we consider Petitioner's sole claim of cause now.

In addition, Petitioner fails to allege a miscarriage of justice as is his burden in order to overcome the procedural default. See, e.g., Simpson v. Sparkman, 172 F.3d 49 (Table), 1998 WL 869967, at *4 (6th Cir. 1998)("Therefore, the burden is on the defendant at this stage to make "a colorable showing of factual innocence" in order to be entitled to the "fundamental miscarriage of justice" exception"). Petitioner does not now claim before this court that he is "actually innocent" of the crime and indeed, on this record, he could not do so. Accordingly, Petitioner has procedurally defaulted Grounds Three to Seven.

For the foregoing reasons, the Amended Petition is denied.

## V. CERTIFICATE OF APPEALABILITY

Because jurists of reason would not find the foregoing debatable, a Certificate of Appealability is denied.

## VI. CONCLUSION

For the reasons set forth herein, Petitioner has not established that he is being held in violation of the Constitution, laws or treaties of the United States.   Accordingly, the Amended Petition is denied.   A Certificate of Appealability is also denied.


                                        BY THE COURT

                                        _s/ Maureen P. Kelly_____
                                        MAUREEN P. KELLY
                                        CHIEF UNITED STATES MAGISTRATE JUDGE

Date:   March 30, 2015

cc:     All Counsel of Record via CM-ECF

        BRANDEN PETTUS
        EQ8206
        1111 Altamont Blvd.
        Frackville, PA 17931